```
        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MARYLAND
```

|                        |   |                                |
|------------------------|---|--------------------------------|
| DEREK N. JARVIS        | : |                                |
|                        | : |                                |
| v.                     | : | Civil Action No. DKC 23-1029   |
|                        | : |                                |
| DISTRICT TACO, LLC     | : |                                |
|                        | : |                                |

**MEMORANDUM OPINION**

Presently pending in this public accommodation case are (1) a motion for remand filed by Plaintiff Derek Jarvis, (ECF No. 12), and (2) a motion to dismiss filed by Defendant District Taco, LLC, (ECF No. 5). For the reasons stated in a prior opinion and at the hearing on June 14, 2023, as well as those stated herein, the motion to remand will be denied and the motion to dismiss will be granted.

**I.   Background**

The relevant background is detailed in the court's prior opinion. (ECF No. 16, at 1-2); *Jarvis v. District Taco, LLC*, No. 23-cv-1029-DKC, 2023 WL 3847428, at *1 (D.Md. June 6, 2023). After issuing that opinion, the court held a hearing to address: (1) whether Defendant was properly served under Maryland law—and thus, whether the removal was timely—and (2) the issues raised in Defendant's motion to dismiss. (ECF No. 19). District Taco, LLC was represented at the hearing by counsel and Christopher Medhurst,

who holds various positions with Defendant and related entities. Plaintiff did not appear.

## II.   Motion to Remand

Under 28 U.S.C § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."  The removing party has the burden of demonstrating jurisdiction and the propriety of removal.  *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815 (4th Cir. 2004).  On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court."  *Barbour v. Int'l. Union*, 640 F.3d 599, 615 (4th Cir. 2011) (en banc), *abrogated by statute on other grounds by* 28 U.S.C. § 1446(b)(2)(B).

The propriety of removal turned on whether Defendant had been served on February 23, 2023, as Plaintiff asserted.  Although Plaintiff presented a signed return receipt, the evidence presented at the hearing (only some of which had been included with the motion papers) established that the signature on the receipt was not that of Mr. Medhurst.  Thus, removal was timely and proper and the motion to remand will be denied.

## III.   Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  To state a plausible claim and survive

2

a Rule 12(b)(6) motion, a Plaintiff must "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  In deciding whether a complaint states a plausible claim, the court must consider all well-pleaded allegations as true. See *Albright v. Oliver*, 510 U.S. 266, 268 (1994).  A court need not, however, accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678-79, or conclusory allegations that lack "factual enhancement," *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

When a plaintiff proceeds *pro se*, the court must liberally construe his or her filings. See *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014).  On the other hand, a plaintiff's *pro se* status neither excuses the plaintiff's obligation to state a plausible claim nor transforms the court into the plaintiff's advocate.  See *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Defendant argues that all claims should be dismissed for insufficient service of process and that the Complaint contains insufficient allegations to state plausibly each claim raised.

3

## A.  Service of Process

Defendant first argues that the complaint should be dismissed because service was insufficient under state law. (ECF No. 5, at 6-7). At the hearing, the court found that Defendant was not served properly.

In cases removed to federal court, "state law determines whether service of process was properly effected prior to removal." *Steverson v. HSBC Auto Fin., Inc.*, No. 10-cv-3119-DKC, 2011 WL 1103164, at *4 (D.Md. Mar. 23, 2011); *Eccles v. Nat'l Semiconductor Corp.*, 10 F.Supp.2d 514, 519 (D.Md. 1998) (same). Under Maryland law, "[s]ervice is made upon a limited liability company by serving its resident agent." Md. Rule 2-124(h). Alternatively, when serving a defendant outside of Maryland, a plaintiff may complete service "in the manner prescribed . . . by the foreign jurisdiction if reasonably calculated to give actual notice." Md. Rule 2-121(a). Plaintiff attempted to serve Defendant at an address in Virginia. Under Virginia law, "process may be served on a corporation or limited liability company created by the laws of the Commonwealth . . . [b]y personal service on any officer, director, or registered agent of such corporation or on the registered agent of such limited liability company." Va. Code Ann. § 8.01-299.

Plaintiff apparently sent the complaint and summons to the owner of a trade name that Defendant had registered, rather than

4

to Defendant's registered agent.  (ECF No. 6, at 17-18).  The address listed under that trade name—2828 Fallfax Drive, Falls Church, VA 22042—is no longer Defendant's principal office or mailing address.  Defendant several years ago moved to a nearby office located at 2890 Emma Lee Street, Suite 200, Falls Church, VA 22042. (ECF No. 7, at 8).  While Plaintiff sent the certificate and summons to Defendant's *prior* office address, the envelope somehow ended up at Defendant's *current* address.  However, the person to whom the envelope was addressed—Christopher Medhurst—was not in the office that day to sign for it because he was on paid leave after the birth of his daughter.  (ECF No. 7, at 8).  Thus, it appears that someone else, who was not authorized to do so, signed Mr. Medhurst's name on the certified mail receipt. (ECF No. 6, at 17).  Because the certified mail was not received or signed by the person to whom it was addressed, service was improper.

That insufficiency of service, however, does not mean the case must be dismissed.  Generally, "[w]hen a case is removed to federal court from a state court and service is found to have been improper [under state law], the remedy . . . is not dismissal." *Acosta v. A&G Management Co., Inc.*, No. 14-cv-515-WMN, 2014 WL 1236918, at *1 (D.Md Mar. 25, 2014).   Under 28 U.S.C. § 1448, if a defendant was not served properly "prior to removal," "such process or service may be completed or new process issued in

5

the same manner as in cases originally filed" in the federal district court to which the case was removed. Thus, the federal court may decline dismissal, retain the case, and order the plaintiff to complete proper service. *See Acosta*, 2014 WL 1236918, at *1.[1]

The insufficiency of service here requires that Plaintiff properly serve Defendant through "new process" if the case goes forward. 28 U.S.C. § 1448. The court must consider Defendant's other arguments for dismissal to determine whether the complaint itself states a cause of action—and thus, whether there is reason to retain the case and permit Plaintiff to serve Defendant properly. *See Acosta*, 2014 WL 1236918, at *1 ("[T]he [c]ourt will not permit Plaintiff to attempt to perfect service here because the [c]ourt also concludes that the Complaint fails to state any . . . cause of action.").

---

[1] *See also Brown v. Experian*, No. 12-cv-2048-JKB, 2012 WL 6615005, at *1-3 (D.Md. Dec. 17, 2012) (quashing service and ordering the plaintiff to serve an amended complaint in a manner that complies with federal law where the plaintiff's pre-removal service attempt was insufficient under Maryland law); *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983) ("If the first service of process is ineffective, a motion to dismiss should not be granted, but rather the [c]ourt should treat the motion . . . as one to quash the service of process and the case should be retained on the docket pending effective service.") (internal quotation marks omitted).

### B. Counts I and III: Claims under Maryland Anti-Discrimination Law

In Counts I and III, Plaintiff raises claims of "interference with the right to contract" and "discrimination in public accommodations," which Plaintiff asserts give rise to a cause of action under "§ 20-602 of the Maryland Annotated Code." (ECF No. 4, at 5 (citing Md. Code Ann., State Gov't § 20-602)). In its motion dismiss Counts I and III, Defendant relies on cases interpreting the *federal* public accommodation discrimination statute—Title II of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000a *et seq.* (ECF No. 5, at 8-10). Proceeding on the assumption that "public accommodation discrimination under [Maryland state law] is the same as Title II of the U.S. Code," Defendant argues that Counts I and III should be dismissed because "there are no facts alleged in the Complaint which would support an inference that the bad service [Plaintiff] allegedly received was because of his race." (ECF No. 5, at 8-12).

As an initial matter, § 20-602 (the statute Plaintiff invokes to support Counts I and III) is about *employment* discrimination, not public accommodation discrimination. In Maryland, public accommodation discrimination is governed by a different provision, § 20-304. *See* Md. Code Ann., State Gov't § 20-304 ("An owner or operator of a place of public accommodation or an agent or employee of the owner or operator may not refuse, withhold from, or deny to

7

any person any of the accommodations, advantages, facilities, or privileges of the place of public accommodation because of the person's race.").

Even if Counts I and III are construed to raise state law public accommodation discrimination claims under § 20-304, they still must be dismissed because "Maryland law does not give rise to a private right of action for discrimination in places of public accommodation." *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F.Supp.3d 392, 407 (D.Md. 2022) (internal quotation marks omitted). Rather, "a person subject to discrimination in a place of public accommodation 'may file a complaint' with the Maryland Commission on Civil Rights, which may issue a complaint against the alleged perpetrator of discrimination 'on its own motion.'" *M.R. by and through N.R. v. Tajdar*, 17-cv-3836-TDC, 2018 WL 6050888, at *5 (D.Md. Nov. 19, 2018) (quoting Md. Code Ann., State Gov't § 20-1004).[2] While Maryland law "expressly provides the right to file a civil action" for other forms of discrimination, there is "no comparable provision" creating a private right of action for public accommodation discrimination. *Id.* (citing Md. Code Ann., State Gov't §§ 20-1013(a), 20-1035). Thus, many courts in this district

---

[2] See Md. Code Ann., State Gov't § 20-1004(a) ("Any person claiming to be aggrieved by an alleged discriminatory act may file a complaint with the [Maryland Commission on Civil Rights]."); *id.* at § 20-101(d)(1) (defining "discriminatory act" to include "Discrimination in Places of Public Accommodation").

8

have held that a private plaintiff may not sue for public accommodation discrimination under Maryland law.[3]

Finally, while much of the parties' briefing on Counts I and III involves cases interpreting Title II (the *federal* public accommodation discrimination statute), neither Count could reasonably be construed to raise a Title II claim. Plaintiff does not mention Title II under either Count—indeed, nowhere in the Complaint does Plaintiff cite Title II or a case involving Title II. Count III is the only part of the Complaint that mentions public accommodation discrimination at all, and Plaintiff clearly invokes state law (and state law alone) to support Count III. (*See* ECF No. 4, at 5-6 ("Defendant . . . is a place of accommodation within the meaning of . . . Maryland ant-discrimination laws . . . [and] Plaintiff is entitled to legal and equitable remedies available under the law and Maryland anti-discrimination laws.")).

---

[3] *See Doe*, 595 F.Supp.3d at 407; *Tajdar*, 2018 WL 6050888, at *5; *Okudo v. Belair Edison LLC*, No. 21-cv-1269-JKB, 2021 WL 4391264, at *3 (D.Md. Sept. 24, 2021) ("§ 20-304 does not authorize a private right of action."); *Binks v. Ally Bank*, No. 20-cv-496-SAG, 2020 WL 5642257, at *2 (D.Md. Sept. 22, 2020) (holding that "it is evident that the legislature created no private right of action" for "persons alleging discrimination in public accommodations," and that the "only recourse rests with the Maryland Commission on Civil Rights"); *Gandy v. Howard County Bd. of Educ.*, 20-cv-3436-GLR, 2021 WL 3911892, at *10 (D.Md. Sept. 1, 2021) ("Maryland's anti-discrimination statute does not give rise to a private right of action . . . [for] a person subject to discrimination in public accommodations.").

Defendant mentions Title II for the first time in his response to Defendant's motion to dismiss. (ECF No. 6, at 6-8). A party may not, however, raise claims in a response to a motion to dismiss that were not raised in the original complaint. What is more, Plaintiff later explained in his motion to remand that he mentioned Title II in his response to the motion to dismiss only because Defendant "utilized federal statutes" in arguing for dismissal, and Plaintiff sought to "respon[d] to" those arguments. (ECF No. 12, at 2). All told, the Complaint does not purport to raise a federal Title II claim and Plaintiff disclaims any notion that he meant to raise such a claim. Thus, the court will not construe the Complaint as raising a claim under Title II.

    C.    **Count II: Negligent Training and Supervision Claim**

In Count II, Plaintiff raises a claim of "negligent training and supervision." (ECF No. 4, at 5). He apparently alleges that Defendant negligently failed to conduct the training and supervision needed to prevent its employees from discriminating against Plaintiff based on his race. To state a claim for negligent training and supervision, a plaintiff must allege that: (1) his or her injury "was caused by the tortious conduct" of the defendant's employee, (2) "the employer knew or should have known by the exercise of diligence and reasonable care that the [employee] was capable of inflicting harm of some type," (3) "the employer failed to use proper care in selecting, supervising or

10

retaining that employee," and (4) "the employer's breach of its duty was the proximate cause of the Plaintiff's injuries." *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F.Supp. 720, 751 (D.Md. 1996) (citing *Evans v. Morsell*, 284 Md. 160, 165 (1978)).

The Complaint is deficient for several reasons. First, Plaintiff does not allege that his injury "was caused by the tortious conduct" of Defendant's employees. *Id.* To satisfy this element, the underlying conduct that caused injury must be *tortious*—that is, it must be "actionable under Maryland common law." *Doe*, 595 F.Supp.3d at 420. A claim cannot, however, rest on a mere "statutory violation." *Id.* at 419 (internal quotation marks omitted). For example, a negligent training and supervision claim cannot be based on a violation of the Americans with Disabilities Act, *see Bryant*, 923 F.Supp. at 751, or on a violation of Title VII, *see Nammack v. Hampstead Pre-Owned*, No. 19-cv-1798-DKC, 2020 WL 1033589, at *6 (D.Md. Mar. 3, 2020).

Here, Plaintiff does not allege that his injury arose from tortious conduct—rather, he claims that Defendant's employees violated anti-discrimination statutes by refusing to serve him based on his race. Such conduct is not actionable under Maryland common law, so it cannot form the basis for a negligent training and supervision claim. *See Jarvis v. Wells Fargo Bank*, No. 21-cv-687-DLB, 2022 WL 1663568, at *6 (D.Md. May 25, 2022) (dismissing a negligent training and supervision claim because the

11

plaintiff alleged only that a defendant employee "violated a federal civil rights statute prohibiting the denial of business services because of a person's race"); *Jarvis v. Staples*, No. 10-cv-244-PJM, 2010 WL 4942010, at *4 (D.Md. Nov. 30, 2010) (dismissing negligent training and supervision claim where plaintiff did not allege conduct by store employees that was "tortious in nature").

Second, Plaintiff has not explained how Defendant "failed to use proper care in selecting, supervising or retaining" its employees. *Bryant*, 923 F.Supp. at 751. To satisfy this element, a plaintiff generally must "specify what training or supervision was required by the defendant[]." *Jarvis v. Leggett*, No. 145, 2020 WL 2950708, at *3 (Md.App. June 3, 2020). The Complaint does nothing to specify the training or supervision Defendant failed to conduct.

Third, Plaintiff has not alleged that Defendant "knew or should have known" that its employees were "capable of inflicting harm" at any point before the alleged harm occurred. *Bryant*, 923 F.Supp. at 751. At most, Plaintiff alleges that he "contacted the store representatives" to complain about the alleged discrimination after it occurred, and that Defendant "fail[ed] to return numerous messages." (ECF No. 4, at 4-5). Assuming that these alleged calls provided Defendant with knowledge about its employees' conduct, that knowledge is irrelevant to this case

12

because Defendant acquired it only *after* the alleged injury happened. Thus, any purported failure to act on that knowledge did not cause the injury. *See Bryant*, 923 F.Supp. at 752 (dismissing a negligent supervision claim in part because the employer learned about its employee's alleged tortious actions only after the plaintiff filed an administrative charge complaining about those actions, and thus "there [wa]s no way that [the employer's] conduct could have prevented the alleged injury").[4]

### D. Count IV: § 1981 Claim

In Count IV, Plaintiff raises a claim for "interference with the right to contract" under § 1981 of the Civil Rights Act of 1866. (ECF No. 4, at 6); (*see also* ECF No. 16, at 4-6 (explaining why Count IV is best read as a § 1981 claim)). Under § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42

---

[4] *See also Jarvis v. Securitas Sec. Servs. USA, Inc.*, No. 11-cv-654-AW, 2012 WL 527597, at *5 (D.Md. Feb. 16, 2012) (dismissing a negligent training and supervision claim in part because the plaintiff did not provide "any factual basis that [the] [d]efendant had actual or constructive knowledge of the conduct or general character of its [employee]"), *aff'd sub nom. Jarvis v. Contractor Securitas Sec.*, 474 F.App'x 271 (4th Cir. 2012); *Karn v. PTS of Am., LLC*, No. 16-cv-3261-GJH, 2017 WL 4162251, at *6 (D.Md. Sept. 19, 2017) (dismissing a negligent training and supervision claim in part because the plaintiff did not "allege prior incidents of misconduct involving [the employees] that would have given [d]efendants actual or constructive notice of their incompetence").

13

U.S.C. § 1981(a).  To succeed on a § 1981 claim, "a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest."  *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (internal quotation marks omitted).  The plaintiff "must also show that the interference with a contractual interest would not have happened but for the plaintiff's race."  *Id.* (citing *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S.Ct. 1009, 1019 (2020)).  Thus, to survive a motion to dismiss a § 1981 claim, "a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements."  *Id.*

The Complaint does not clear that bar.  Plaintiff alleges only that "two White Hispanic female[]" employees "refused to get up when [Plaintiff] requested service," and "laughed each time [Plaintiff] was in the facility."  (ECF No. 4, at 4).  The Complaint contains no other details that would support a reasonable inference that this alleged behavior occurred because of Plaintiff's race.  It does not, for example, allege that Defendant served similarly situated White customers around the same time it denied service to Plaintiff.  Instead, Plaintiff simply asserts in the Complaint that the employees "refused to serve [him] and denied [him] service

14

because of [his] race." (ECF No. 4, at 4). That conclusory allegation is insufficient.[5]

Resisting this outcome, Plaintiff relies on two out-of-circuit cases in which a plaintiff made allegations sufficient to state a plausible § 1981 claim: *Hall v. Pennsylvania State Police*, 570 F.2d 86 (3d Cir. 1978), and *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285 (5th Cir. 2004). Both of those cases, however, involved allegations of racial animus that were far more detailed and specific than those found here. In *Hall*, a plaintiff alleged that a police department instructed local banks to "[t]ake photos of any [B]lack males or females coming into [the] bank who may look suspicious." *Id.* at 88. Following that directive, a defendant bank then allegedly implemented a policy of tracking Black customers, and it photographed the plaintiff under that policy. *Id.* at 92. Meanwhile, in *Causey*, the plaintiff alleged that employees of the defendant car dealership used racial expletives, including twice yelling the N-word in reference to a

---

[5] *See Jarvis*, 2022 WL 1663568, at *4 (dismissing a § 1981 claim based on a bank's alleged refusal of service, and finding that the plaintiff's "conclusory allegation that [the bank] denied his request to open an account and refused to accept his check because of his race falls short of the specific, factual allegations required to plausibly allege discriminatory intent"); *Jarvis*, 2010 WL 4942010, at *3 (dismissing a § 1981 claim based on a store employee's alleged refusal to allow a plaintiff to re-enter the store, and reasoning that "no race-based animus inheres in this allegation" by itself).

15

Black customer. 394 F.3d at 287-88. Here, the Complaint contains no such details.

Plaintiff will, however, be given a chance to file an amended complaint which includes greater factual support for his § 1981 claim. When a plaintiff fails to state a claim, "he should generally be given a chance to amend the complaint," *Weigel v. Maryland*, 950 F.Supp.2d 811, 825-26 (D.Md. 2013) (internal quotation marks omitted), unless the complaint "is incurable through amendment" such that "any amendment would be futile." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017) (internal quotation marks omitted); *see also Weigel*, F.Supp.2d at 826 ("[D]ismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim.").

Plaintiff's § 1981 claim is not necessarily "incurable." In an affidavit attached to his response to Defendant's motion to dismiss, Plaintiff states that on both occasions in which he was denied service, he witnessed White customers "being served," and asserts that these customers were "similarly situated." (ECF No. 6, at 16). Defendant rightly notes that these allegations are not in the Complaint and thus cannot be considered in deciding the motion to dismiss. (ECF No. 7, at 4-5). If, however, Plaintiff could provide an amended complaint which more thoroughly describes the service he allegedly saw White customers receive and more

16

concretely explains why those customers were similarly situated, such allegations may be sufficient to state a § 1981 claim.

When a business allegedly refuses to provide goods or services to a prospective customer who is a member of a protected class, the customer may establish a § 1981 claim by showing that he or she "met the [business's] ordinary [purchase] requirements" and that the business "afforded such an opportunity to a White customer" in similar circumstances. *Williams v. Staples, Inc.*, 372 F.3d 662, 668 (4th Cir. 2004). For example, in *Williams*, a Black student tried to purchase an item from Staples using an out-of-state check. *Id.* at 665. The store refused the check, even though it "maintained a policy of accepting all checks from all customers," including out-of-state checks. *Id.* at 668. Meanwhile, "on the same day," the store accepted an out-of-state check from the student's White classmate. *Id.* The United States Court of Appeals for the Fourth Circuit held that this evidence was "sufficient . . . to establish a prima facie case" under § 1981. *Id.*[6]

---

[6] Of course, at the motion to dismiss stage, a plaintiff "need not plead facts sufficient to establish a prima facie case." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Still, a court may consider the requirements of a prima face case in deciding whether a plaintiff has stated a plausible § 1981 claim. *See Coleman v. Md. Ct. App.*, 626 F.3d 187, 190-91 (4th Cir. 2010) (dismissing a § 1981 claim because the complaint "fail[ed] to establish a plausible basis" for several prima facie elements and thus did not support a reasonable inference that race discrimination occurred); *Jarvis*, 2022 WL 1663568, at *4 ("The

17

Plaintiff may be able to state a § 1981 claim in an amended complaint by providing sufficient details to show that he met Defendant's "ordinary requirements" for buying food and that Defendant denied him service while serving White customers instead. Such allegations would "allow the court to draw a reasonable inference," *Nadendla*, 24 F. 4th at 305, that Defendant denied Plaintiff "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).

Although Plaintiff has not sought leave to amend, and has been given notice of the required elements of a § 1981 claim in earlier cases, district courts have discretion to grant leave to amend "freely" and "when justice so requires."  Fed.R.Civ.P. 15(a)(2).  The court will exercise that discretion in this case, and Plaintiff will have 21 days to file an amended complaint.

Additionally, because Defendant has not yet been properly served, if Plaintiff chooses to file an amended complaint, he must serve that complaint and summons on Defendant in a manner that complies with the Federal Rules of Civil Procedure.  *See* 28 U.S.C. § 1448 (post-removal service must be done "in the same manner as

---

Court must consider the elements of a discrimination claim to discern whether the plaintiff has stated a facially plausible claim," because "a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to the elements.") (cleaned up).

18

in cases originally filed" in the "district court of the United States" to which the case was removed).

Plaintiff may effectuate service by presenting a prepared summons form to the Clerk for signature and seal and then serving a copy of the Clerk-issued summons and amended complaint on Defendant.  Under Fed.R.Civ.P. 4(c)(2), service of a summons and complaint may be effected by any person who is not a party and who is at least 18 years of age.  Under Fed.R.Civ.P. 4(l), the person effecting service of the summons and complaint must promptly notify the court, through an affidavit, that he or she has served Defendant.  If Plaintiff does not use a private process server, and instead completes service through certified mail, restricted delivery with return receipt requested, Plaintiff must file with the Clerk the United States Post Office acknowledgment as proof of service.  Service of process on corporations and associations may be made pursuant to Fed.R.Civ.P. 4(h).  Plaintiff may contact the office of the State Department of Assessments and Taxation at (410) 767-1330 or visit the website at https://egov.maryland.gov/BusinessExpress/EntitySearch to obtain the name and service address for the resident agent of a corporate defendant.

Finally, the state court waived Plaintiff's court costs, apparently because he reported receiving zero income.  (ECF No. 13-1, at 22-31).  If Plaintiff wishes to proceed in forma pauperis

19

in this court, he may file an affidavit of indigency. If he does so and the court permits him to proceed in forma pauperis, then the United States Marshal would effectuate service of process on Defendant. *See* Fed.R.Civ.P. 4(c)(3). At this point, however, Plaintiff has not yet indicated any intention to proceed in forma pauperis in this court, and if he does not submit an indigency affidavit, he will be required to effectuate service without the assistance of the Marshal through the process outlined in the prior paragraphs.

**IV.   Conclusion**

For the foregoing reasons, the motion to remand will be denied and the motion to dismiss will be granted. Counts I, II, and III will be dismissed with prejudice. Count IV will be dismissed without prejudice, and Plaintiff will have 21 days to file an amended complaint which includes greater factual support for his § 1981 claim.

/s/
DEBORAH K. CHASANOW
United States District Judge
